DECISION AND JUDGMENT ENTRY
This case is on appeal from the August 29, 2000 judgment of the Lucas County Court of Common Pleas, Juvenile Division. In that decision, the court found Anisha N., Kaelynn G. and Kevin G., III to be dependent and neglected children and terminated the parental rights of the mother, appellant, and the father, Kevin G. On appeal, the mother asserts the following assignments of error:
"FIRST ASSIGNMENT OF ERROR
 "LUCAS COUNTY CHILDREN SERVICES PUNISHED APPELLANT FOR HER CONFUSION REGARDING AND FAILURE TO COMPLY WITH A NON-EXISTENT NO CONTACT ORDER.
"SECOND ASSIGNMENT OF ERROR
 "THE TRIAL COURT'S AWARD OF PERMANENT CUSTODY TO LUCAS COUNTY CHILDREN SERVICES WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE."
The following facts are derived from the testimony of a caseworker for appellee presented during the adjudication hearing in this case. The children at issue were initially removed from the parental home in July 1998. Kevin G., father of Kaelynn G. and Kevin G., III and the mother's husband, was found to have abused Anisha N. (five years old) and Kaelynn G. (two years old). Kevin G., III (one year old) was found to be dependent. Kevin G. did not meet any of his goals for reunification. However, the mother successfully met her case plan goals and Kaelynn G. and Kevin G., III were returned to her custody in May 1999. Appellee believed that custody was returned subject to appellee's protective supervision. Anisha N. was also returned to the mother's custody under a shared parenting agreement with Anisha N.'s father.
According to the caseworker, the agency obtained an ex parte order on September 9, 1999 to remove the children from the mother's custody because they could not be located. On September 10, 1999, the agency obtained emergency temporary custody on the same basis. The children were removed sometime near the end of September 1999 on allegations that the children were dependent and neglected.
However, the record in this case begins with the filing of a complaint in dependency and neglect filed February 9, 2000. In appellee's first amended complaint in dependency and neglect filed February 15, 2000, appellee alleged that the parents were residents of Lucas County at the time the complaint was filed (although the parents were then both living in Indiana according to their testimony at the adjudication hearing). Appellee alleged that at the time the children were removed from the mother's home in Lucas County in September 1999, the apartment had no food or utilities, and the mother was behind in her rent. The complaint also alleged that the mother had moved with Kaelynn G. and Kevin G., III to Indiana to live with Kevin G. in August 1999 without the agency's knowledge or consent. Appellee also alleged that Kevin G. cared for the children during the mother's absence. Appellee sought termination of the parental rights and permanent custody to appellee pursuant to R.C.2151.353(A)(4).
At the adjudication hearing, the following evidence was presented. Rose Seiler, a case worker for Lucas County Children Services, testified that the children were returned to the mother subject to certain requirements: that the mother would continue in individual counseling, maintain housing, provide for the children's basic needs, and cooperate in a safety plan regarding Kevin G.'s contact with the children. Seiler testified that the mother did not follow through on any of these requirements.
Seiler also testified that it was understood between the mother and Seiler that it was a requirement that the mother protect the children from Kevin G. because of his abusive nature. Seiler's safety plan was not a part of the written case plan but was based on conversations with the mother. Seiler believed that the mother had falsely led Seiler to believe that all ties with Kevin G. had been severed in April or May 1999 and that the mother did not even know his whereabouts and intended to divorce him. Therefore, Seiler did not incorporate into the case plan objectives the need to separate the children from Kevin G. in order to protect them.
In August 1999, Seiler was unable to locate the mother for several weeks after several unannounced visits. After the children were removed from the mother's home in September 1999, Seiler interviewed Anisha N. Seiler testified that Anisha N. told Seiler that the children had been in the presence of Kevin G., that he had been mean to them. Anisha wanted the agency to get her brother and sister to protect them. Kaelynn G. (age three at the time) disclosed to Seiler that while they were in Indiana, Kevin G. had beaten Kevin G., III with a belt while their mother was working. Seiler testified that the mother admitted in October 1999 that the children had contact with Kevin G. The mother testified, however, that she did not begin working at the Holiday Inn until after the children had been removed from her home in September 1999 and, therefore, Kevin G. could not have cared for her children as alleged. She also testified that her children only saw Kevin G. once at his job while they were visiting in Indiana. Kevin G. also testified that he saw his children only once after May 1999 when the mother brought them to his job. He stated that he merely waved at them from the sidewalk while they waited in the car.
The mother testified that Kevin G. and she lived in Indiana before moving to Toledo, Ohio. In 1998, she became involved with appellee because Kevin G. had improperly disciplined her children. Kevin G. and she separated in October 1998. In August and September 1999, the mother decided to move back to Indiana and return to school because she was eligible for financial assistance and she wanted to move away from Kevin G.'s family. She believed that Seiler had caused problems by telling the family that the mother would never let them see the children again.
The mother admitted that she made four trips to Indiana with Kaelynn G. and Kevin G., III to arrange for housing and to enroll in college. She testified that it was just coincidence that she decided to move to Indiana shortly after Kevin G. had done so. On the return from her fourth visit, she found that appellee was taking her children away again.
The mother admitted that she had never told Seiler about her intentions of moving. The mother believed that the case would be closed in September and that she would be free to leave. She admitted that she never paid for September rent although her lease ran through October 1999 and required thirty days notice if she did not want to renew the lease. However, the mother was residing at the apartment on the night the children were removed even though she had not paid rent for September.
After the children were removed in September 1999, the mother testified that she did move to Indiana, enrolled in college, and obtained employment. She admitted that she does have occasional contact with Kevin G., but denied that they lived together. She and Kevin G. both denied that he had cared for the children while the mother was working and that the only contact he had with the children was seeing them at his place of employment.
The mother also testified that it was her understanding that the children could see Kevin G. in a public place but never alone or at home. The mother testified that she discontinued her individual counseling because she was moving to Indiana. The mother denied ever having been told that she could not even speak to Kevin G. again or she would lose her children. She testified that she was never told that she could lose her kids if she moved away.
Kevin G. testified that he moved back to Indiana in June 1999 and lives with a friend, but did not know the address. He denied living with the mother. He also testified that he was never told that he could have no contact with the mother, just that he could not see the children alone. He never sought visitation with his children because he knew he could not finish the case plan requirements and he has no desire for custody of the children. He only wants to help the mother get them back.
In its August 29, 2000 judgment, the court found that the mother had moved to Indiana in August 1999 with Kaelynn G. and Kevin G., III to be close to Kevin G.; that she allowed Kevin G. to care for the children in her absence; that the mother put all three children at risk by allowing contact with Kevin G.; and that the mother failed to abide by the visitation agreement with the father of Anisha N. Therefore, the court determined that the children were dependent and neglected. Because the case was being heard on the last day of the ninety day requirement, the court immediately moved into the disposition phase of the hearing.
In her first assignment of error, appellant alleges that the trial court erred by adjudicating the children to be dependent and neglected when there was no order or case plan objective that Kevin G. was never to have contact with his children again. We agree.
First, there is nothing in the record to substantiate that appellee even retained protective supervision over the children when they were reunited with the mother in May 1999. Furthermore, the agency's basis for removal of the children appears to have stemmed solely from its understood agreement with the mother that she was not to allow Kevin G. to have any contact with the children. However, there is nothing in the record to substantiate that this requirement was part of the order returning custody to the mother. There is also no testimony as to why Kevin G. was adjudicated to have abused two of the children and yet no disposition order was ever issued regarding the parental rights of Kevin G in the first action removing the children from the parental home.
R.C. 2151.412(A) requires that all children returned to their home subject to the agency's protective supervision must have a case plan. Furthermore, any agreements between the parties must be made part of the case plan journalized by the court. R.C. 2151.412(D). All parties are then bound to adhere to the case plan, and it cannot be changed without court approval. R.C. 2151.412(D).
Without the entire record before the court, we find that the trial court could not find clear and convincing evidence that the children were dependent and neglected.
Appellant's first assignment of error is well-taken. Because of our ruling on the first assignment of error, appellant's second assignment of error is now moot.
Having found that the trial court committed error prejudicial to appellant, the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is reversed. This case is remanded to the lower for further proceedings consistent with this decision. Pursuant to App.R. 24, appellee is hereby ordered to pay the court costs incurred on appeal.
 _____________________ Peter M. Handwork, J.
Melvin L. Resnick, J. and Richard W. Knepper, J. CONCUR.